Louis Hall and Joan P. Hall, Husband and Wife v. Commissioner.
Hall v. Commissioner
Docket Nos. 37461, 40802.
United States Tax Court
1953 Tax Ct. Memo LEXIS 242; 12 T.C.M. (CCH) 564; T.C.M. (RIA) 53179; May 22, 1953
*242 Kenneth C. Tiffin, Esq., for the petitioners. Nathan M. Silverstein, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $655.37 for 1947, $1,132.86 for 1948 and $971.14 for 1949 against the petitioners. The only issue for decision is whether losses sustained in raising dogs are deductible as losses from a business regularly carried on for profit. Findings of Fact The petitioners, husband and wife, filed joint returns for the taxable years with the collector of internal revenue for the District of Massachusetts. Louis was graduated from Harvard in 1933 and thereafter did some graduate work in law and theology but received no degree in either. He entered the United States Navy in 1942 and continued in that service until 1944. He and Joan were married in 1945 and they considered how he could profitably occupy his time. He had never been employed or engaged in business, except for his service in the Navy, and he was unsuccessful in his efforts to obtain employment. He had income from trusts, interest and dividends of $5,379.48 for 1946, $4,881.14 for 1947, $16,010.96 for 1948 and *243 $18,841.41 for 1949. He had had a little previous experience with dogs beginning in 1939, he liked dogs and he and Joan decided to go into the business of raising and selling cocker spaniels for profit. The breed was popular in England but relatively new in the United States. They built a new garage on their residence property at Wayland, Massachusetts, and turned the old one-car garage into a one-room kennel and fenced in a large double run for dogs. The kennel had capacity for four litters a year. They continued to use those facilities until 1949 when they decided to acquire a more desirable place with more room for their spaniels. They purchased a place in Holliston, Massachusetts, on which there was a barn, containing five single dog pens, and a pony barn which they improved with a new foundation, a wing and running water outlets. They put a kitchen and eight pens in the pony barn. Each new pen could accommodate two dogs. They fenced in large runs adjacent to the kennels. Those kennels had capacity for sixteen litters a year. The improvements were completed in November 1949. They had equipment usual in such an establishment. The petitioners devoted their full time to their *244 dog business during the taxable years and did all of the work themselves, except a negligible amount. The spaniels required a great deal of attention. They tried to have their kennels and dogs become widely and favorably known by exhibiting and winning in shows, by advertising, by joining Kennel Clubs and by helping the latter put on shows. Their dogs won many events at shows during the taxable years. They kept no books for the dog business but kept a list of stud fees and sales receipts. Some expenses were paid by check, others in cash. Some items such as automobile, telephone, electricity and heat were prorated between business and personal expense. The breeding dogs owned and litters whelped in the taxable years were as follows: 1947
1948
1949
Matrons
2
3
3
Dogs
3
3
2
Litters
2
1
2
They could have had more litters in each year but sales did not justify more. Each matron can have two litters a year and there are usually five or six pups in a litter. Puppies sell for from $65 to $75 each. The stud fee at the petitioner's kennels was $50. No dogs belonging to others were boarded. The receipts, ordinary and necessary expenses and losses *245 of the dog business were as follows during the years 1946 through 1949: 1946
1947
1948
1949
Expenses
$2,447.48
$3,613.01
$4,887.17
$4,670.04
Receipts
525.00
310.00
105.00
819.77
Loss
$1,922.48
$3,303.01
$4,782.17
$3,850.27 Those losses were claimed as deductions on the returns. The Commissioner, in determining the deficiencies, disallowed the losses from the operation of the kennels and explained that they "were not incurred in a trade or business, or in a transaction entered into for profit and, therefore, are not allowable deductions from gross income." The petitioners entered into the dog business in 1945 and carried it on during the taxable years in good faith for the purpose of making a profit and in the belielf that they could eventually realize a profit from the business. Opinion MURDOCK, Judge: The question here is whether these petitioners operated these kennels for personal reasons, in which profit was not essential, or strictly as a business for the realization of profits. That is a question of fact to be determined from the record before the Court. The Commissioner points to the consistent losses, Louis' love of dogs, *246 his independent means to gratify it, the lack of records, and argues that this was not a business but a personal expense from which no one could reasonably expect a profit. He concedes that "an enterprise of this sort cannot be expected to yield profits from its inception * * *." Louis points to his modest income, his desire for gainful occupation, the long hours at hard work put in by him and Joan and their belief that they could, in time, make the business profitable after their kennels and the breed became better known. Of course, continued losses over a longer period could swing the balance the other way but there is a fair preponderance of the evidence in the present record in the petitioners' favor on which findings have been made. The Commissioner's counsel argues that all of the expenses have not been substantiated. The deficiency notices indicate that the deductions were disallowed for the sole reason that there was no profit motive. The evidence, in view of this determination, justifies the allowance of the amounts claimed on the returns. Decision will be entered under Rule 50.